UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MIGUEL PEDRAZA,

     Petitioner,

v.                         Case No: 2:16-cv-338-FtM-29MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

     Respondents.[1]
_____/

## OPINION AND ORDER

This matter comes before the Court on Petitioner, Miguel Pedraza's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1), filed on May 5, 2016. The Respondent, Julie Jones, Secretary of the Department of Corrections, filed her Response in Opposition (Doc. #12) on October 25, 2016. Pedraza filed his Reply Brief to the Respondent's Opposition (Doc. #15) on November 16, 2016. The Petition is fully briefed and ripe for the Court's review.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

## I.   Background

Shortly after midnight on November 24, 2005, Pedraza and his Co-defendants unlawfully entered the house located at 18060 Nalle Road in North Fort Myers, Florida. (Ex. 5, at 3). According to the record before the Court, Pedraza was driving the vehicle that transported the individuals to the Nalle Road residence with the express purpose of robbing the men inside. (Ex. 5, at 3).  The owner of the Nalle Road residence was Pedraza's uncle, Rafael Tinco. (Ex. 5, at 3).  Tinco used the North Fort Myers residence to house construction workers employed by his Miami based construction company. (Ex. 5, at 3-4).  During the course of the robbery shots were fired and one man, Jose Gomez, was killed. (Ex. 5, at 5-6).

On February 1, 2006, the Grand Jury for the Twentieth Judicial Circuit in and for Lee County, Florida, indicted Pedraza on charges of felony murder in the death of Jose Gomez in violation of Fla. Stat. § 782.04(1), 775.87(2)(a), and 777.011. (Ex. 5, at 1).  On January 23, 2009, the jury found Pedraza guilty of felony murder. (Ex. 3).  Pedraza filed a motion for a new trial on April 2, 2009, which was denied by the trial court on October 13, 2009.  Pedraza appealed the trial court's denial of his motion for a new trial on October 19, 2009.  Florida's Second District Court of Appeals *per curiam* affirmed the trial court's ruling on July 1, 2011. (Ex. 8).

On April 27, 2012, Pedraza filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. § 3.800.  He was ordered to file an amended petition because his original petition was not filed under oath. (Ex. 13).  On October 16, 2013, he filed his amended petition.  The § 3.800 petition was denied on October 16, 2013. (Ex. 14).

On July 23, 2013, Pedraza filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. § 3.850.  That petition was denied on March 17, 2014. (Ex. 17).  The Second District Court of Appeals affirmed the denial without opinion and the appeals court's Mandate was issued on May 18, 2016. (Ex. 23); Pedraza v. State, 190 So. 3d 72 (Fla. 2d DCA 2016).

Pedraza now files the instant motion for habeas corpus relief pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) 28 U.S.C. § 2254.

## II. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007). Respondent concedes that the Petition is timely filed in this Court, and this Court agrees. (Doc. #12, at 3-4).

Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. Alston v. Fla. Dep't of Corr., 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted).

3

AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

**A. Deference to State Court Decisions**

A federal court must afford a high level of deference to the state court's decision. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Cullen v. Pinholster, 563 U.S. 170, 181(2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, 562 U.S. 86, 102 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

4

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, 559 U.S. 43, 47 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably

applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 562 U.S. at 86. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

### B. Ineffective Assistance of Counsel

6

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal

Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   Id.   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   Strickland, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue.   Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").   "To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So, omissions are inevitable.   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"   Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. See Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'" (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995))). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of

the State to raise, by any available procedure, the question presented." Pruitt, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004).

### III. Discussion

Pedraza raised the following three grounds in his Petition: Ground One, ineffective assistance of counsel for failing to argue the correct predicate needed to allow him to introduce evidence of bias relating to state witness Elizabeth Reed;[2] Ground Two, denial of the constitutional right of due process due for failing to allow a jury instruction of duress and accessory after the fact; and Ground Three, denial of due process by the trial court by allowing improper opinion testimony by Detective Kalstrom.

#### A. *Ground One: Ineffective Assistance of Counsel*

In Ground One, Pedraza avers that trial counsel should have argued that Reed's testimony was biased because she was a suspect in a second robbery/homicide after the Nalle Road robbery/homicide

---

[2] Elizabeth Reed was a passenger in the vehicle driven by Pedraza to the Nalle Road residence on November 24, 2005. Reed remained in the vehicle during the robbery/homicide. After Reed was questioned by police about the incident, she was arrested and charged with first degree murder for her participation in events at the Nalle Road residence. Reed subsequently pled guilty to the reduced charge of second degree murder and agreed to testify against her Co-Defendants. (Ex. 5, at 4-6).

at issue in Pedraza's case. Although Reed was questioned about the second robbery/homicide, she was never charged. Pedraza states that during her initial interview and subsequent interviews Reed "continuously exculpated" him. (Doc. #1, at 5). Pedraza contends that it was only after Reed was questioned/implicated in a second robbery/homicide investigation—approximately a year and a half after the instant case—that Reed agreed to enter into a plea deal with the State of Florida. After Reed made her deal with the State Attorney's Office, she then changed her position regarding Pedraza and implicated him in the November 24, 2005 murder of Gomez. Pedraza argues that since Reed was never charged in the second robbery/homicide investigation, it should be presumed that she received a deal and her testimony would be biased against him.

Pedraza argues that trial counsel tried to introduce Reed's bias caused by her being dropped as a suspect in the second robbery/homicide at his trial, but was prevented by the trial court. At the trial, trial counsel did indeed attempt to question Reed about her potential involvement in a second robbery/homicide. Trial counsel argued that exposing Reed as a suspect in the second, but unrelated robbery/homicide, would demonstrate that her testimony was tainted with bias. However, before trial counsel could pursue that line of questioning, the prosecutor objected. After a bench conference, the trial court sustained the prosecutor's objection and Pedraza's trial counsel's attempt to

discredit Reed due her possible participation in a second robbery homicide was barred.

Pedraza argues that he was prejudiced because trial counsel did not attempt to argue that Reed's testimony was biased due to the fact that no charges were pressed against her in the second robbery/homicide.  Pedraza wanted counsel to insinuate that Reed was not charged because she cut a plea deal and agreed to testify against him in order to escape prosecution in the second robbery/homicide.  Pedraza contends that since Reed was the only witness who could tie him to the crime, he should have been allowed to probe her bias on cross examination.  Consequently, Reed argues that trial counsel was ineffective because she did not bring up Reed's obvious bias based upon the fact that she cut a deal with the State of Florida which led to her not being charged in the second robbery/ homicide.

Respondent maintains that Pedraza's trial counsel did not violate Strickland in her representation at trial.  Respondent notes that Pedraza raised this issue—and only this issue—in his Rule 3.850 post-conviction relief motion.  The post-conviction court denied Pedraza's Rule 3.580 claim finding that Pedraza could not satisfy both requirements under Strickland.

The post-conviction court noted that trial counsel attempted to challenge Reed's credibility by insinuating that she was not charged in the second robbery/homicide because she agreed to

testify against Pedraza.   The State objected to that line of questioning.  The trial court sustained the State's objection, and thereafter Pedraza's trial counsel did not pursue Reed's connection to the second/robbery homicide.  Upon review, the post-conviction court held that trial counsel was not deficient in her response to the prosecutor's objection because the second robbery/homicide was inadmissible and the trial court correctly sustained the State's objection. (Ex. 22, at 1072).   The post-conviction court noted that Pedraza's trial counsel did cross examine Reed at trial and challenged her credibility on matters related to Pedraza's case.

Pedraza's trial counsel was not ineffective under <u>Strickland</u>. In order to prove that trial counsel was ineffective, Pedraza would have to prove that trial counsel's performance was deficient and that her deficient performance prejudiced his case.  Here, the trial court ruled that use of Reed's possible involvement in a second robbery/homicide—a crime for which she was never charged—would violate Florida law.  At the bench conference on the State's objection to that line of questioning, trial counsel vigorously argued for the inclusion of the second/robbery homicide in order to undermine Reed's credibility.  Once the trial court refused to allow that line of questioning, trial counsel did cross examine Reed about the terms of her plea deal and inconsistencies between her trial testimony and her previous contradictory statements

regarding the Nalle Road robbery/homicide. When questions regarding the second robbery/homicide were barred, Pedraza's trial counsel attacked Reed's credibility within the parameters allowed by the trial court's rulings. As such, trial counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms and thus, her performance was not deficient.

Moreover, Pedraza cannot demonstrate prejudice because his trial counsel was allowed the opportunity to cross examine Reed about her plea deal and credibility. The post-conviction court noted in its ruling that trial counsel's failure to use the second robbery/homicide to discredit Reed did not prejudice Pedraza's case because the second/robbery homicide was inadmissible. Pedraza was not prejudiced by trial counsel's actions because the outcome of the case could not have been changed since the second robbery/homicide could not be admitted. Thus, Pedraza's claim for ineffective assistance of counsel is denied.

### B. Ground Two: Denial of Jury Instruction of Duress and Accessory After the Fact

In Ground Two, Pedraza argues that he was denied his constitutional right to due process and a fair and impartial trial because the court did not allow a requested jury instruction of duress and accessory after the fact. Pedraza avers that he was not complicit in the robbery/homicide, but that he was merely at the scene, and was under the influence of narcotics and a dominant

co-defendant.   Pedraza further claims that his mere presence at the scene is not sufficient to establish that he was a principal to the crime.

Respondent maintains that Pedraza is procedurally barred from pursuing Ground Two because he failed to exhaust his claim in State court.   Pedraza admits that he did not exhaust Ground Two in state court, but argues he should be allowed to raise it now because he is not an attorney and did not understand the rules and procedures for filing a direct appeal.   Thus, he claims he should be allowed to bring an unexhausted claim for the first time on federal habeas review.

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); Picard v. Connor, 404 U.S. 270, 275-76 1971).   Pedraza acknowledges that he has never raised his claim challenging the State court exclusion of a requested jury instruction of duress and accessory after the fact. (Doc. #1, at 7).

Pedraza argues that under Martinez v. Ryan, Ground Two should not be procedurally barred as unexhausted because he did not have the knowledge to aid him in his initial collateral review. 566

U.S. 1 (2012).[3]  In <u>Martinez</u>, the United States Supreme Court held that "[w]here, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Id.</u>  Pedraza's *Martinez* argument lacks merit.  The <u>Martinez</u> ruling only addresses ineffective assistance of counsel and does not address court error.

Ordinarily, a federal habeas corpus petition containing unexhausted claims is dismissed under <u>Rose v. Lundy</u>, 455 U.S. 509, 522 (1982), this would allow Pedraza to return to the state courts to present his unexhausted claim.  However, such a result in this instance would be futile since any direct appeal would be untimely under Florida law.  Ground Two is dismissed as both unexhausted and procedurally barred.

C. ***Ground Three: Improper Opinion Testimony***

In Ground Three, Pedraza avers he was denied his constitutional rights of due process and a fair and impartial trial due to the trial court allowing the improper opinion testimony of Det. Kalstrom.  Pedraza claims that Det. Kalstrom alluded to his

---

[3] Pedraza was represented by counsel on appeal by Special Public Defender Jeffrey Sullivan. (Ex. 5, at 33).

guilt in his testimony and offered his opinion that Pedraza was the mastermind of the entire robbery/ homicide.

Pedraza made a motion for mistrial at the end of Det. Kalstrom's testimony.  The trial court held that Det. Kalstrom was not offering an opinion on Pedraza's guilt or innocence but was explaining why he thought Pedraza was a suspect.  Pedraza states that he did not bring the issue on direct appeal because as a lay person he did not understand the rules and law regarding appeals. Respondent replies that "although Pedraza did raise the issue of Det. Kalstrom's testimony, in his direct appeal, he did not raise the issue as a federal constitutional claim." (Ex. 5, at 26-30). Since Ground Three was not raised as a federal claim on appeal, Respondent argues that Ground Three is procedurally barred.

In his direct appeal to the Second District Court of Appeals, Pedraza argued, based solely on Florida law, that the trial court should have granted a mistrial because Det. Kalstrom said in his "opinion" Pedraza planned the robbery.  However, Pedraza did not argue that his claim was a federal constitutional claim.

Pursuant to Duncan v. Henry, 513 U.S. 364 (1995), petitioner must fairly present the substance of his federal claim to the state courts in order to satisfy the exhaustion requirement. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under

the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan, 513 U.S. at 365-66. "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, (2004). In this instance, Pedraza failed to bring to the state court his claim in Ground Three as a federal constitutional claim and instead brought the claim under Florida law. (Ex. 5, at 26-30). Thus, Pedraza failed to exhaust his claim in Ground Three.

Pedraza acknowledges that he has never raised the claim presented in Ground Three on direct appeal. As discussed above, a federal habeas corpus petition containing unexhausted claims is dismissed under Rose v. Lundy, 455 U.S. 509, 522 (1982), this would allow Pedraza to return to the state courts to present his unexhausted claim. However, such a result in this instance would

be futile since any direct appeal would be untimely under Florida law.  Thus, Ground Three is dismissed as both unexhausted and procedurally barred.

In his reply, Pedraza appears to indirectly raise an issue of ineffective assistance of appeals counsel by arguing that he was uninformed and lacked knowledge of the process to raise this issue on appeal. (Doc. #15, at 2-3).  He states he was required to rely on institutional law clerks to help him with his procedures. Thus, it appears while Pedraza admits that the issue is unexhausted, he appears to argue ineffective assistance of appellant counsel for the failure to exhaust Ground Three on appeal.

Although an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to _that_ claim.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 450-51 (2000).  In order to satisfy the cause-and-prejudice standard, Pedraza must have first exhausted the underlying ineffective assistance of appellate counsel claim, which he did not do. <u>Id.</u> at 453.  Nor has Pedraza presented new, reliable evidence to support an actual innocence claim. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Consequently, the ineffective assistance of appellate counsel claim, raised for the first time

in Pedraza's reply (Doc. #15), does not satisfy the cause-and-prejudice standard, or fundamental miscarriage of justice exceptions required to overcome the procedural default of Ground Three.

Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Consequently, Ground Three is procedurally barred and cannot be considered by this Court.

In the alternative, even if Pedraza's claim in Ground Three was not procedurally barred and assuming it raises a federal claim, it still lacks merit. As noted by the Respondent, the trial court denied Pedraza's motion for a mistrial. In denying the motion for a mistrial, the trial court found that Det. Kalstrom was not giving an opinion on guilt or innocence, but was giving his rationale on why Pedraza was a suspect in the case. (Ex. 5, at 27). At Pedraza's request, the trial court gave a jury instruction informing the jury that "the use of the word opinion is not to be considered by you as an opinion of the guilt or innocence of this defendant. The use of the term 'opinion' can be considered as a statement of his opinion as to what led him to believe this witness was a suspect in the case and why he pursued investigations of this

suspect." (Ex. 5, at 28); See Weeks v. Angelone, 528 U.S. 225, 226 (2000) (a jury is presumed to follow the court's instructions).

Pedraza does cite to one federal case in his direct appeal. Pedraza cites to United States v. Young, 470 U.S. 1 (1985), to support his position that Det. Kalstrom's testimony caused a mistrial. However, he does not rely on Young to support a violation of federal law or a constitutional right. In fact, the holding in Young support's the Respondent's position.

In Young, petitioner argued that his due process rights had been violated when the prosecutor remarked during rebuttal closing that in his personal opinion Young was guilty. The Supreme Court held:

> that prosecutor's remarks during rebuttal argument in which he stated his opinion that defendant was guilty and urged the jury to "do its job" did not amount to plain error, requiring reversal despite lack of objection, where any potential harm from prosecutor's giving his personal opinion was mitigated by jury's understanding that prosecutor was countering defense counsel's repeated attacks on prosecution's integrity and defense counsel's argument that the evidence established no crime and where overwhelming evidence of guilt eliminated any doubt that prosecutor's remarks unfairly prejudiced the jury.

Young, 470 U.S. at 1. Similarly, Det. Kalstrom was responding to trial counsel's questions when he testified. During the trial, the following exchange occurred between Pedraza's trial counsel and Det. Kalstrom.

Trial Counsel:      And so you recall basically asking [Elizabeth
                    Reed] if [Pedraza] was of the group, as well?
                    And do you recall what her answer was?

Det. Kalstrom:      I think she went on to explain that he was just
                    driving.  That her—

Trial Counsel:      Basically she said he was not part any [sic] of
                    The criminal actions as she perceived them to be
                    criminal actions; is that correct?

Det. Kalstrom:      Well that may have been Elizabeth's opinion, but
                    driving the get-away car was culpable, in my mind.

Trial Counsel:      Yes sir.  And that's why he became, as far as our
                    concerned, a suspect in the case because he was
                    driving the vehicle from the scene; isn't that
                    correct?

Det. Kalstrom:      Well it was that and other things.

Trial Counsel:      Yes sir.  The fact that you found out later that
                    his relatives had owned the property?

Det. Kalstrom:      Yes he had set it up.

Trial Counsel:      Okay. You're saying that she said he set it up?

Det. Kalstrom:      No I am not.  That was my opinion.  You asked me
                    what led me to consider him a suspect. The fact
                    that he led them there and then drove the vehicle
                    was my reason for considering him a suspect.

(Ex. 5, at 27-28).

     Det. Kalstrom was responding to trial counsel's questions as
to why Pedraza—in his opinion—was a suspect and not making a
statement of guilt or innocence. Given that the trial court
instructed the jury that Det. Kalstrom's opinion was not evidence
and that Det. Kalstrom was responding to trial counsel's line of
questioning, Pedraza's claim that Det. Kalstrom's testimony denied

him due process and a fair trial fails.  Accordingly, Pedraza is denied relief as to Ground Three.

### Conclusion

After a thorough review of the case law, statutes, Parties' memoranda of law, and the record, the Court finds that Pedraza's grounds for habeas relief lack merit and his Petition is due to be denied.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Florida Attorney General is **DISMISSED** from this action.

2. Petitioner, Miguel Pedraza's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1) is **DENIED IN PART AND DISMISSED IN PART.** Ground One is **DENIED** on the merits.  Grounds Two and Three are **DISMISSED as procedurally defaulted**, and Ground Three is also **DENIED** alternatively on the merits.

3. The Clerk of the Court shall terminate any pending motions, enter judgment accordingly, and close the case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO FILE APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1);

Harbison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

   **DONE** and **ORDERED** in Fort Myers, Florida this __4th__ day of April, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:Miguel Pedraza
       Asst. Attorney General, Soyna Roebuck Horbelt
       FtMP-2

24